UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VIKTOR KHALIMSKY ET AL.                    CIVIL ACTION

VERSUS                                     NO. 07-8959

LIBERTY MUTUAL FIRE INSURANCE COMPANY      SECTION "N"  (5)

# O R D E R and R E A S O N S

Before the Court are several motions for partial summary judgment, all filed by

Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"):

(1) Motion for Partial Summary Judgment on Bad Faith Claims (Rec. Doc. 30);

(2) Motion for Partial Summary Judgment on Flood Offset (Rec. Doc. 31);

(3) Motion for Partial Summary Judgment Dismissing Plaintiffs' Claims for all Damage

Caused, in Whole or in Part, by Flood (Rec. Doc. 32);

(4) Motion for Partial Summary Judgment Dismissing Plaintiffs' Loss of Use Claim

(Rec. Doc. 33); and

(5) Motion for Partial Summary Judgment Dismissing Plaintiffs' Claim for Mental

Anguish, Medical Expenses, and Loss of Income (Rec. Doc. 34).

The motions are opposed by Plaintiffs Viktor Khalimsky and Faina Lushtak (together,

"Plaintiffs"). After considering the Complaint, the memoranda and supplements to the

memoranda, and the applicable law, the Court rules as set forth herein.

# I. BACKGROUND

At the time of Hurricane Katrina, Plaintiffs owned a home at 3845 Marcia Drive in the Lakeview area of New Orleans. The entire first floor of the home was flooded up to eight feet, and the water did not recede for several days, causing the total destruction of the home below the flood level as well as all contents on the first floor. Plaintiffs were paid $198,000 for dwelling loss and $52,500 for contents loss under their flood insurance policy (not issued by Liberty Mutual), which was the policy's limits.

Plaintiffs had a policy of insurance with Liberty Mutual, bearing policy number H32-291-006200-606 4, in effect at the time of Katrina. An adjustor, Charles Murray, inspected the Marcia Drive property on October 15, 2005. Based on Murray's estimate, Liberty Mutual issued Plaintiffs a check for $1,113.51 (after a $2,800 deductible) for wind damage above the flood line. After Plaintiffs sent Liberty Mutual additional photographic evidence of damage, the company paid an additional $1,095.42, for a total damages payment of $2,208.39. Additionally, the company paid Plaintiffs $4,000 for loss of use (or "additional living expenses") in September 2005, in two separate payments of $2,000 each.

Plaintiffs filed suit claiming that they were not paid the full value of their loss for dwelling, contents, or use and that Liberty Mutual's adjustment and subsequent failure to pay was arbitrary and capricious and in bad faith within the meaning of LA. REV. STAT. ANN. §§ 22:1220 and 22:658.[1] Plaintiffs also claim that Liberty Mutual's bad faith adjustment caused or

---

[1] Effective January 1, 2009, LA. REV. STAT. ANN. § 22:1220 was renumbered § 22:1973. By the same act, LA. REV. STAT. ANN. § 22:658 was renumbered § 22:1892. *See* Acts 2008, No. 415, § 1. For ease of reference and to conform to the Complaint, the Court will cite to §§ 22:1220 and 22:658.

contributed to a stroke that Khalimsky suffered in December 2005, and that Liberty Mutual is liable under §§ 22:658 and 22:1220 for substantial damages resulting from the stroke.

## II. ANALYSIS

### A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the

light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. Motion for Partial Summary Judgment as to Flood Damage**

Liberty Mutual moves for partial summary judgment on any claim for damages resulting, in whole or in part, from flood. Plaintiffs' insurance contract included a standard anti-concurrent cause (ACC) clause, excluding any coverage for flood damage "regardless of any other cause or event contributing concurrently or in sequence to the flood or loss." *See* Mot. at Ex. D (Khalimsky policy at p. 16) (Rec. Doc. 32).

An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *Carbon v. Allstate Ins. Co.*, 719 So.2d 437, 439 (La. 1998); *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994). Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the Court. *See Texas Eastern Transmission Corp. v. Amerada Hess*, 145 F.3d 737, 741 (5th Cir. 1998). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046. In addition, a contract provision is not ambiguous merely because one party can create a dispute in hindsight, *see Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996); *Rutgers, State Univ. v. Martin Woodlands Gas Co.*, 974 F.2d 659, 662 (5th Cir. 1992), and a court may not create an ambiguity where none exists. *See Slocum-Stevens Ins. Agency v. Int'l Risk Consultants, Inc*., 666 So.2d 352, 357 (La. App. 1995). When the contract is not ambiguous, a court has no authority to reach beyond the four corners of the document. *See Huggs, Inc. v. LPC Energy, Inc*., 889 F.2d 649, 653 (5th Cir. 1989).

Citing to non-Fifth Circuit precedent, Plaintiffs argue that the "key issue in the case . . . is

not whether an ACC is enforceable in the abstract, but whether it approiately applies in this case." Opp. at 4. Be that as it may, Plaintiffs have failed to distinguish this case from others in which, applying Louisiana law, the Fifth Circuit has upheld ACC clauses that unambiguously exclude coverage for flood damage, whether the flood preceded or was subsequent to damage from other causes such as wind. *See Arctic Slope Regional Corp. v. Affiliated FM Ins. Co.*, --- F.3d ---, 2009 WL 860037, at *3 (5th Cir. 2009); *Leonard v. Nationwide Mutual Ins. Co.*, 499 F.3d 419 (5th Cir. 2007); *Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007). Finding no such grounds to distinguish the instant case, the motion is granted. Plaintiffs will be precluded from recovering for any damage caused by flood, whether exclusively or not, including any loss of contents below the flood line.

**C. Motion for Partial Summary Judgment as to Loss of Use**

Plaintiffs argue that the $4,000 they received in loss of use payments was inadequate under the policy. Plaintiffs' policy provided loss of use payments for covered losses that make a policy holder's "residence premises . . . not fit to live in." Mot. at Ex. D (Khalimsky Policy, p. 44) (Rec. Doc. 33). The "additional living expenses" payments are meant to compensate "any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living." *Id.* In *McGill v. Republic Fire & Casualty Insurance Company*, this Court noted that

> to prevail on a motion for summary judgment as to deficiency in payments for additional living expenses, a Plaintiff cannot simply point to living expenses, but must show evidence of additional expenses beyond the norm for his standard of living. That is, he has to show his normal, baseline costs, and then expenses *beyond that baseline*.

*McGill v. Republic Fire & Cas. Ins. Co.*, 2008 WL 4792720, at *3 (E.D. La. 2008) (emphasis in

original).

Defendant advances several arguments in support of their motion for summary judgment on this issue. First, Liberty Mutual notes that the portion of the house that was uninhabitable–the flooded first floor–was not uninhabitable because of a covered loss, but rather by flood. Second, Liberty Mutual argues that Plaintiffs have admitted that the upper floor of their residence was not "not fit to live in" within the meaning of the policy. Specifically, Defendant points to a letter Khalimsky sent to Liberty Mutual in November 15, 2005, noting that "my second floor is in relatively good shape" and that "my family could comfortably live on our second floor were it not for the lack of gas and electrical services in our area." Mot. at Ex. F (Khalimsky letter). Khalimsky even attached an article from the local newspaper noting that many New Orleans residents were choosing to live on their second floors while their lower floors were being gutted and rebuilt. *Id.* Finally, Liberty Mutual argues that Plaintiffs have offered no evidence of additional living expenses. In response, Plaintiffs argue that Liberty Mutual has misconstrued the letter and that all that Khalimsky meant was that his family could resume living upstairs once needed repairs had been completed. Plaintiffs also point to a spreadsheet, signed by Plaintiffs in March 2007 but unsworn, showing additional living expenses of $28,725.12. *See* Mot at Ex. G (ALE spreadsheet).

The Court pretermits the questions of whether the loss was covered or whether the second floor was "not fit to live in" within the meaning of the policy, because it finds that Plaintiffs cannot carry their burden under Rule 56 of showing additional living expenses. "It has long been settled law that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991)

(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n.19, 160 (1970)). Plaintiffs need not rely

solely on affidavits or depositions to support assertions in their briefs; any of the documents

listed in FED. R. CIV. P. 56(c) would suffice. *Id.* at 192. But an unsworn, unsupported document

does not create a genuine fact issue that precludes summary judgment. *See Nissho-Iwai Am.*

*Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) ("It is a settled rule in this circuit that an

unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."). In this

case, Plaintiffs have provided no receipts, no credit card statements, no affidavits from hoteliers

or other persons whom they paid out of their own funds after Hurricane Katrina. The only

evidence of additional living expenses is a spread sheet drawn up and signed–though not sworn

to–more than 18 months after the event. This is not sufficient to survive the motion for summary

judgment on this issue, and the motion is accordingly granted.[2]


### C. Motion for Partial Summary Judgment as to Flood Offset

---

[2] Plaintiffs argue that they "detailed step-by-step their expenses from the time of leaving New Orleans. They provided information about the hotels to which they evacuated first in Houston, Texas, then in Jacksonville, Arkansas, and Petersburg, Virginia. . . . Further, they have provided detailed information about their moving fees and costs of temporary housing upon their return to New Orleans." Opp. at 13. The only testimony resembling that description comes in Lushtak's deposition, in a section attached to Plaintiffs' opposition to the motion for partial summary judgment on bad faith claims. *See* Opp. at Ex. C (Lushtak deposition, 25-11 to 26:8. Even in that snippet of testimony, Lushtak admits that she has no documentation of the $1,500 per month in expenses she claims. *Id.* (26:5-6). This testimony does not speak to important matters such as whether such deposition testimony absent other evidence of expenditure (such as receipts) is sufficient to survive summary judgment on this issue, or whether these are expenses beyond the norm for Plaintiffs' standard of living, or whether these items in total exceed the $4,000 Plaintiffs have already been paid for additional living expenses. The fact is that the deposition testimony attached to Plaintiffs' opposition concerns the state of the second floor of their home, not additional living expenses the Plaintiffs incurred. The Court can only decide the motion on the evidence before it, and the sum of that evidence is an unsworn spreadsheet, which is insufficient to raise a genuine fact issue.

In this motion, Liberty Mutual seeks to limit the uncompensated damages that it may be liable for to $74,209.89, which is the sum of the cost of repairs that have been completed on Plaintiffs' home minus the total flood policy payments that Plaintiffs have received. Of course, nothing bars Plaintiffs from collecting under their homeowners policy for wind damage and from collecting under their flood policy for flood damage if they can segregate and prove the two types of damages. *See Galloway v. State Farm Fire & Cas. Co.*, 2008 WL 1712309, at *4 (E.D. La. April 9, 2008); *Deslonde v. Allstate Ins. Co.*, 2008 WL 440417, at *3 (E.D. La. Feb. 13, 2008); *Wellmeyer v. Allstate Ins. Co.*, 2007 WL 1235042, at *2 (E.D. La. April 26, 2007). Plaintiffs, however, cannot recover twice for the same loss. *See id.*; *Weiss v. Allstate Ins. Co.*, 2007 WL 891869, at *1 (E.D. La. Mar. 21, 2007); *Broussard v. State Farm Fire & Cas. Co.*, 2007 WL 2264535, at *2-3 (E.D. La. Aug. 2, 2007); *Cole v. Celotex Corp.*, 599 So.2d 1058, 1080 (La. 1992) ("As a general rule, the claimant may recover under all available coverages provided there is no double recovery.").

Liberty Mutual seeks to limit Plaintiffs' recovery under their homeowners' policy, claiming that all repairs have been completed and that the total amount of repairs was $274,418.28, from which payments under the flood policy and the homeowners' policy, as well as Plaintiffs' deductible, must be deducted to establish the outer boundary of Plaintiffs uncompensated loss. In support of this assertion, Liberty Mutual points to the following exchange in Faina Lushtak's deposition:

> Q: Are the repairs to your house finished today?
> A: Uh, yes, finished. Finished. Finished.

Mot. at Ex B. (Lushtak deposition 47:1-4).

However, reviewing the deposition in context–and with attention to the fact that neither of the Plaintiffs in this case are native English speakers–it is unclear whether Lushtak is referring to repairs of all Katrina-related damage or merely to the repairs that Plaintiffs have to date commenced, mostly to the first floor. Further, it is not at all clear at this stage of the litigation that the cost of repairs actually completed to date is the correct measure of Plaintiffs' damages. As another section of the Eastern District has noted,"no policy provision or legal principle prevents plaintiffs from recovering for previously uncompensated, covered damage, without reference to the amount received under their flood policy, so long as the combined recovery does not exceed the value of the property." *Broussard*, 2007 WL 2264535 at *4. To be sure, Plaintiffs will not be permitted a double recovery, but on the showing made the motion must be denied.

**D. Motion for Partial Summary Judgment as to Bad Faith**

Liberty Mutual seeks summary judgment on Plaintiffs' claims for bad faith penalties under 22:658 and 22:1220. Sections 22:658 and 22:1220 do not penalize insurance companies for failing to pay claims, but for failing to pay claims in a manner that is "arbitrary, capricious, or without probable cause." LA. REV. STAT. ANN. § 22:658(B)(1); LA. REV. STAT. ANN. § 22:1220(B)(5). Under both penalty statutes, Plaintiffs bear the burden of proving (1) that Defendant received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period; and (3) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause. *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 752 (La. App. 1999). "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is *clear* that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay." *Reed v. State Farm Mutual Automobile Inurance. Co.*, 857 So. 2d

1012, 1021 (La. 2003) (emphasis added); *see also Holt v. Aetna Cas. & Sur. Co.*, 680 So. 2d 117, 130 (La. App. 1996) ("In bad faith actions, the insured is seeking extra-contractual damages, as well as punitive damages. Therefore, the insured's burden is great.").

To prevail, an insured must show that an insurer "knowingly committed actions that were completely unjustified, without reasonable or probable cause or excuse." *Lewis v. State Farm Ins. Co.*, 946 So.2d 708 (La. App. 2006). The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense, even if the insurer is later found liable for failure to pay. *Reed*, 857 So.2d at 1020-21. However, it is the insurer's duty to make a reasonable investigation of claims and adjust them fairly and promptly. 630 So.2d 939, 953-55 (La. App. 1993).

The Court finds that though the question is a close one, nonetheless a reasonable factfinder could find that Liberty Mutual's failure to investigate Khalimsky's attic for damage was arbitrary and capricious within the meaning of §§ 22:1220 and 22:658. Plaintiff has testified that he asked Murray to look at the attic and that Murray refused to do so and told Khalimsky to instead send pictures of any damages he found. Opp. at Ex. B (Khalimsky deposition, 58:20-25; 59:3-19; 105:23-26; 106:1-25); *see also id.* at Ex. A (Parnes deposition, 19:15-21); Ex. C (Lushtak deposition, 36:3-22). Murray does not remember whether or not he entered the attic. Supp. Opp. at Ex. A (Murray deposition, 45:1-4) (Rec. Doc. 80). Yet he certainly knew the roof had sustained damage, because he authorized payment for repairs made to the roof. *Id.* (Murray deposition, 75:13-17). Further, Lushtak testified that there was extensive staining of the second-floor ceilings and walls, a further indication of roof damage and subsequent leaking. Opp. at Ex. A (Lushtak deposition, pp. 30-34, attached to opposition to motion on loss of use) (Rec. Doc.

38). Plaintiff has testified that he called both Murray and Liberty Mutual to request an additional adjustment and specifically that they look at his attic. Opp. at Ex. B (Khalimsky deposition, 106:1-25). Liberty Mutual has acknowledged that there was at least *some* damage not accounted for by the original adjustment, since it paid an additional sum based on photographic evidence forwarded by Khalimsky. Finally, the photographs and report from Plaintiffs' independent adjustor show cracks in the exterior bricks and gaps in the roof joists in the attic that indicate the possibility of roof uplifting, which would require additional remediation and, if proven, would possibly be covered under the policy as wind damage. Opp. at Ex. B (Gurtler Bros. report). A reasonable factfinder could conclude that sufficient warning signs existed to make it unreasonable for Murray not inspect Plaintiffs' attic and that, had he done so, as a trained adjustor he would have discovered the evidence of additional roof damage. Taken together, these facts and inferences are sufficient to raise a genuine material fact issue as to the bad faith of Liberty Mutual's adjustment of Plaintiffs' claim.

It is also possible that a jury could conclude that Murray's investigation was in good faith, or that he would not have discovered the evidence of roof uplifting, or that there is in fact no additional, uncompensated damage to Khalimsky's home. But on a summary judgment motion, all the Court need find is that a reasonable factfinder could find that this was a bad faith adjustment of Khalimsky's claim and thus there is a genuine material fact issue. The Court so finds.

Liberty Mutual attempts to equate the instant case to others where courts have determined that an insurer did not withhold payment in bad faith. The Court finds these cases distinguishable, since in each, the insurer actually conducted an investigation but drew a

different, good-faith conclusion about damages from the evidence produced by that investigation. *See Viloria v. State Farm Fire & Cas. Co.*, 2008 WL 4691050, at *4 (E.D. La. Oct. 22, 2008) (State Farm "sent an adjustor to the property, and it is uncontested that he inspected the pier and beam foundation and observed shims and other evidence of settling that pre-dated Hurricane Katrina"); *Gates v. Auto Club Family Ins. Co.*, 2007 WL 1464259 (E.D. La. May 17, 2007) (differing interpretations of wind damage in expert reports in "concrete slab" case); *Husseiny v. Independent Fire Ins.*, 1996 WL 637547, at *1 (E.D. La. Nov. 1, 1996) (adjustor and licensed contractor "inspected the entire exterior and interior of the plaintiffs' residence, and also asked the plaintiffs to point out any related storm damage"); *Myers v. Broussard*, 696 So.2d 88 (La. App. 1997) (insurance company disputed damages when physicians drew different conclusions after examining accident victim and medical records). By contrast, in the instant case, Liberty Mutual did not inspect the relevant portion of the home, leaving it instead to Plaintiffs to forward photographs, despite clear warning signs that there may have been roof and attic damage that were potentially compensable. Having failed to inspect the attic despite indications of damage, Liberty Mutual cannot on summary judgment hide behind the "good-faith reliance" safe harbor of §§ 22:658 and 22:1220.[3]

_____

[3] Liberty Mutual also cites to *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618 (5th Cir. 2008), but this citation is inapposite since the Fifth Circuit in that case was considering a Mississippi punitive damages statute somewhat different from the Louisiana statutes in question here. Further, even if the standard applied under both statutes were exactly the same, in *Broussard* the award of punitive damages for bad faith was reversed because the insurer drew conclusions about wind-versus-water causation only after it "examined the position of the home seaward of the debris line and the condition of trees on and around the Broussards' property. The adjuster concluded that the damage to the trees was more consistent with flooding than with tornadic winds and stated that '[o]ur investigation shows that the insured location and surrounding neighborhood was damaged by a tidal surge and flood' and denied coverage on this ground." *Id.* at 628. This contrasts sharply with Liberty Mutual's alleged failure to investigate

Having considered the evidence as a whole, the Court concludes that a reasonable factfinder could find that Liberty Mutual's adjustment of Plaintiffs claim was arbitrary and capricious within the meaning of §§ 22:658 and 22:1220. Accordingly, there is a genuine material fact issue as to bad faith and the motion is denied.[4] This denial, however, is without prejudice as to Liberty Mutual's ability to bring a Rule 50 motion on this issue at the close of the Plaintiffs' evidence.

**E. Mental Anguish and Other Damages**

Liberty Mutual moves for partial summary judgment on Plaintiffs' claims for mental anguish, medical expenses, and loss of income stemming from the stroke Khalimsky suffered in December 2005. The stroke was the direct result of a coronary incident Khalimsky had in November 2005, approximately a month after Murray's adjustment and, Plaintiffs note, days after Khalimsky had a series of tense and increasingly argumentative conversations with representatives of Liberty Mutual regarding his policy and Murray's adjustment. After this incident, Khalimsky was prescribed Plavix, a prescription blood thinner, and aspirin, which raise a patient's risk of stroke. As part of his cardiac treatment, he underwent a treadmill cardiac stress test at a hospital in Virginia, to which he had evacuated. Hours after this test, Khalimsky suffered a stroke that caused him to be hospitalized for several weeks, undergo intensive physical therapy and other treatments, damaged his cognitive, visual, motor, and speech functions, and forced him to retire from his position as a professor at Tulane University.

the attic in the instant case.

[4] Plaintiffs also argued that Liberty Mutual's failure to pay additional loss of use expenses was in bad faith, but in light of the granting of the motion for partial summary judgment as to those claims, the Court declines to consider these arguments.

Plaintiffs claim that Liberty Mutual's bad-faith adjustment of his homeowner's claim caused Khalimsky stress and mental anguish that set into motion the series of events that led to his stroke and the resulting damage. In a suit for damages, it is the plaintiff's burden to prove the extent of the loss suffered because of defendant's fault, and the award must be supported by the record. *Borden, Inc. v. Howard Trucking Co.*, 454 So.2d 1081, 1092 (La. 1983). "Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the proof, taken as a whole, shows that the fact or causation sought to be proved is more probable than not." *Rye v. Terminix Serv. Co.*, 423 So.2d 754, 756 (La. App. 1982). Although the lack of independent, corroborating evidence need not be fatal to the plaintiff's burden of proof, the absence of even a minimum amount of detail or specificity regarding the extent of damages suffered precludes an award. *Arteck Serv., Inc., v. Crown Point Indus., Inc.*, 473 So.2d 345, 349 (La. App.1985).

The Fifth Circuit recently settled the question of whether insurers could be liable for mental anguish and other general damages resulting from a breach of § 22:1220:

> [Section] 22:1220 is broadly worded, explicitly permitting liability for "any damages sustained," including, without limitation, "any general or special damages." "General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'" By authorizing "any damages," including "any general or special damages," the legislature pointedly permitted the award of mental anguish damages.

*Dickerson v. United States*, 556 F.3d 290, 303-04 (5th Cir. 2009) (footnotes omitted). The Court reads the statutory language and the Fifth Circuit's decision in *Dickerson* as subjecting general damages under § 22:1220 to the same standard that such damages would be subjected to in any duty-risk analysis under Louisiana tort law. This four-part analysis is well-settled: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*, was it a

cause-in-fact of the harm which occurred? (2) Did the defendant owe a duty to the plaintiff? (3) Was the duty breached?(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?, *i.e.*, Was the breach of duty the legal or proximate cause of the damage? *Roberts v. Benoit*, 605 So.2d 1032, 1042 (La. 1992). The plaintiff has the burden of proving every essential element of his case by a preponderance of the evidence. *Jordan v. Travelers Insurance Company*, 245 So.2d 151 (La. 1971); *see also* Prosser, TORTS, § 41, p. 269 (5th ed. 1984). Proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. *Jordan*, 245 So.2d at 155; *Town of Slidell v. Temple*, 164 So.2d 276 (La. 1964).

While neither party's discussion of the issues surrounding the claim for general damages in this case is precise, nonetheless, the point at issue is whether the alleged breach of § 22:1220 in this case was the legal or proximate cause of the damages Khalimsky claims. Liberty Mutual argues that Plaintiffs cannot show that it caused Khalimsky's stroke, as opposed to being caused by other factors. It notes that Khalimsky has a family history of coronary disease and had a heart attack in 2001, after which he was prescribed Plavix. It points to Khalimsky's medical records, which show that just weeks before Katrina made landfall Khalimsky's doctor warned him that he may need a valve replacement and noted that he had a number of risk factors for coronary disease, including excess weight, lack of exercise, and inappropriate eating habits. Liberty Mutual also argues, with good cause, that Khalimsky was under the natural and inevitable stress of dealing with the consequences of a major disaster such as Hurricane Katrina, but in this sense was not differently positioned from many other residents of Southeast Louisiana. Finally, Liberty Mutual notes that the stroke was caused by the prescription of Plavix and aspirin, not by any

action it took. In response, Plaintiffs note that at the time of Katrina, Khalimsky had not suffered

any coronary incidents for four years and claim that he had made major changes to his diet and

lifestyle and was in relatively good health. Fundamentally, Plaintiffs argue that Liberty Mutual

takes its insured as it finds him and that there is a direct line of causation between the company's

alleged breach and Khalimsky's chest pains and stroke.

The Court finds it useful to its analysis to segment the claim for mental anguish damages

from the other categories of damage claimed. In *Dickerson*, the Fifth Circuit noted that

determinations of whether a plaintiff has suffered mental anguish as a result of a defendant's

breach are "necessarily fact-specific, so outcomes vary." *Dickerson*, 556 F.3d at 305.[5] However,

neither expert testimony nor proof of medical or psychiatric care are required to establish such

damages, *id.*, and the Circuit has previously held that a claim for such damages may be

supported solely by plaintiff's testimony, though such testimony must be "sufficiently detailed"

---

[5] The Circuit characterized the cases as follows:

> For example, in *Orellana* [*v. La. Citizens Prop. Ins. Co.*, 972 So.2d 1252 (La.
> App. 2007)], the fact that the plaintiff had to stand idle and watch his home
> deteriorate while his insurer refused to pay helped convince the court that
> mental anguish damages under § 22:1220 were proper. Another Louisiana court
> found the evidence sufficient to support an award for mental anguish based on
> the testimony of an elderly couple who both stated that they felt helpless as they
> watched their home become more and more damaged by vibrations from a
> prolonged street drainage construction project in their neighborhood, and that
> they would have to endure additional distress as the home was repaired. Still
> another court sanctioned mental anguish damages based on the plaintiffs'
> testimony that a crop failure forced them to take on mortgages and finance their
> farming operation on credit cards, causing them "increased stress, irritability,
> and short tempers." In other cases, Louisiana courts have found testimony of
> humiliation and fears of possible injury sufficient, but have also held that
> evidence of damage to reputation and harm from gossiping was insufficient.

*Dickerson*, 556 F.3d at 305 (footnotes omitted).

to allow a Court to discern the basis of the claim for such damages. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Among the testimony that the Circuit accepted in *Dickerson* as supporting the claim for mental anguish damages was the plaintiff's "daughter's testimony of watching her father's mental state deteriorate and his becoming short-tempered and anti-social." *See Dickerson*, 556 F.3d at 306. The Circuit also noted that physical manifestations of mental anguish and stress are admissible evidence in support of mental anguish damages. *Id.* (noting that evidence that plaintiff suffered a rash supported mental anguish damages award).

In this case, the Court finds that there is ample evidence of mental anguish resulting from Liberty Mutual's alleged breach such that summary judgment as to such a claim is precluded. Lushtak and Khalimsky's daughter, Ann Parnes, testified that Khalimsky had a calm personality prior to Katrina. Opp at Ex. C (Parnes deposition, 29:15-25); Ex. D (Lushtak deposition, 107-08). Both testified that Khalimsky's frustration with Liberty Mutual was a major source of stress in the household, and that as he talked about the matter his demeanor changed from calm to angry, he would grow red in the face, pace the room, and rant about the details of his conversations with Liberty Mutual representatives in a frustrated and bitter tone. *Id.* at Ex C (Parnes deposition, 18, 20-21); Ex. D. (Lushtak deposition, 36, 112); Ex. A (Khalimsky affidavit); Ex. F (Khalimsky deposition, 153, 262-63). From November 17th to November 19th of 2005, Khalimsky had seven different phone conversations with representatives of Liberty Mutual, which became increasingly contentious and argumentative. Within hours of the last call, he suffered the chest pains that caused him to seek medical attention. *Id.* at Ex. A (Khalimsky affidavit); Ex. F (Khalimsky deposition, 262-63). These phone calls and the chest pains are competent circumstantial evidence of mental anguish. Taken together with the testimony of Khalimsky, Lushtak, and Parnes, these facts create a genuine material fact issue that precludes

summary judgment as to mental anguish damages.[6]

The analysis is different as to damages for lost income and medical expenses resulting from the stroke, however, since the Court finds that Liberty Mutual's alleged breach was not a legal or proximate cause of the injury. It is true that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. *Johnston v. Ford Motor Co.*, 443 F. Supp. 870 (E.D. La. 1978); *Perniciaro v. Brinch*, 384 So.2d 392, 395 (La. 1980); *Sansonni v. Jefferson Parish School Board*, 344 So.2d 42 (La. App. 1977); *Deville v. United States Fidelity & Guaranty Co.*, 258 So.2d 694 (La. App. 1972). When the defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. *American Motorist v. American Rent-All*, 579 So.2d 429 (La. 1991); *Walton v. William Wolf Baking Company, Inc.*, 406 So.2d 168 (La. 1981); *Perniciaro v. Brinch*, 384 So.2d 392 (La. 1980).

Nonetheless, not every act leading up to an injury can be said to be a cause of an injury; rather, the act or acts taken as a whole must be more probably than not a substantial factor without which the injury would not have occurred. *Laird v. Travelers Ins. Co.*, 267 So.2d 714, 717 (La. 1972); *Hauck v. Facility Mgmt. Of La., Inc.*, 637 So.2d 1154, 1156 (La. App. 1994). "Proximate cause" is cause "which immediately precedes and produces the effect, as

---

[6] It is clear that Plaintiffs may introduce evidence of Khalimsky's chest pains as circumstantial evidence of mental anguish. However, despite the Court's conclusion, *infra*, that Plaintiffs cannot recover lost income and medical expenses stemming from Khalimsky's stroke because they cannot show that Liberty Mutual's actions were a proximate cause of the stroke, the Court has not yet decided whether evidence of Khalimsky's *stroke* is admissible as circumstantial evidence of mental anguish. The Court expects that, should this matter proceed to trial, this issue will be the subject of a motion in limine addressing all aspects of the question, including the probative value of such evidence as compared to its prejudicial effect. The Court would also welcome relevant expert or medical testimony tending to support or disprove any alleged link between Khalimsky's stroke and the alleged mental anguish.

distinguished from remote, mediate, or predisposing cause," or cause "from which the fact might be expected to follow without the concurrence of any unusual circumstance." *Beard v. Coregis Ins. Co.*, 968 So.2d 278, 283 (La. App. 2007) (citations omitted). "'Proximate' cause primarily inquires whether a party's duty extends to the particular risk in question that causes injury to another party in a tort action." *Id.* (citing *Frost v. Albright*, 460 So.2d 1125, 1127 (La. App. 1984), *writ denied*, 462 So.2d 1266 (La. 1985).

The Court concludes that Liberty Mutual's alleged breach was not a harm within the risk of a bad faith insurance adjustment. The harm of mental anguish is well within the risk of an insurer who breaches its duty of good faith and fair dealing to its insured, especially when the adjustment complained of concerns the insured's home. But especially in a case where there is a history of heart disease and evidence of lifestyle factors raising the risk of serious medical problems as well as the intervening cause of the prescription of a drug increasing the risk of stroke, the Court cannot say that a stroke is a foreseeable harm within the risk of a bad-faith breach of a contract of insurance.[7]

Accordingly, the motion is granted in part and denied in part. The motion is denied as to mental anguish damages, and Plaintiffs may put on evidence of such damages at trial. The motion is granted as to medical expenses and loss of income stemming from Khalimsky's stroke.

---

[7] The Court is aware that under Louisiana law, a tortfeasor is liable not only for the injuries which he causes directly to the tort victim, but also for additional suffering caused by inappropriate medical treatment. *Weber v. Charity Hospital of Louisiana*, 475 So.2d 1047 (La. 1985). Plaintiffs have not argued that the administration of Plavix and aspirin was inappropriate or negligent. Further, the cases establishing this proposition are distinguishable, since they involve negligent physical injury to a plaintiff who then is injured further by inadequate medical care. The possibility that a plaintiff will seek medical care after a physical injury and be further injured in the course of such treatment is clearly a harm within the risk of causing another physical injury. This principle is inapposite in a case where the injury to plaintiff is a bad -faith breach of contract.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the

(1) Motion for Partial Summary Judgment on Bad Faith Claims is **DENIED**;

(2) Motion for Partial Summary Judgment on Flood Offset is **DENIED**;

(3) Motion for Partial Summary Judgment Dismissing Plaintiffs' Claims for all Damage Caused, in Whole or in Part, by Flood is **GRANTED**;

(4) Motion for Partial Summary Judgment on Loss of Use is **DENIED**; and

(5) Motion for Partial Summary Judgment on Mental Anguish, Medical Expenses, and Loss of Income is **GRANTED IN PART AND DENIED IN PART**.

New Orleans, Louisiana, this 9th day of April, 2009.

**KURT D. ENGELHARDT**
**United States District Judge**